1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MICHAEL AQUINO,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL EDWARD BREEDE, et al.,<br><br>    Defendants. | Case No.  18-cv-06916-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; DENYING DEFENDANTS' MOTION FOR SANCTIONS**<br><br>[Re: ECF 17, 19] |

Before the Court are two related motions: Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF 17) and Defendants' Motion for Rule 11 Sanctions (ECF 19).  The Court heard oral argument on Defendants' motions on June 27, 2019 ("the Hearing").  Having considered the oral argument, briefing, and relevant law, and for the reasons set forth below, the Court hereby GRANTS Defendants' motion to dismiss on the grounds that Plaintiff has failed to show that Defendants purposefully directed their allegedly tortious actions at California and DENIES Defendants' motion for sanctions because the instant action was not filed for an improper or frivolous purpose and is not barred by the *Rooker-Feldman* doctrine.

I.    **BACKGROUND**

A.    **General Background**

On November 15, 2018, Plaintiff Michael Aquino filed this diversity action against Defendants Michael Edward Breede and Alan Adair Moss (collectively, "Defendants").  *See generally* Compl., ECF 1.  The Complaint alleges a single cause of action: tortious interference with contractual relations.  *Id.* ¶¶ 62–69.  Plaintiff is a citizen of New Jersey.  *Id.* ¶ 3.  Defendant

1    Breede is a citizen of Connecticut.  *Id.* ¶ 4.  Defendant Moss is a citizen of Utah.  *Id.* ¶ 5.

2        Plaintiff's allegation against Defendants of tortious interference with contractual relations

3 concerns a 2017 sale of assets by Integrated Surgical, LLC ("Integrated Surgical").  According to

4 the Complaint, Integrated Surgical was a privately held medical device development company

5 headquartered in Palo Alto, California, that developed a revolutionary family of electrical medical

6 devices.  Compl. ¶ 6.  Defendants state that Integrated Surgical is a now-dissolved Connecticut

7 entity, whose business and operations were at all times located in Connecticut, and dispute

8 Plaintiff's assertion in the Complaint that Integrated Surgical was headquartered in Palo Alto.  *See*

9 Motion to Dismiss ("MTD") at 3; *see also* Breede Decl., Ex. A to Request for Judicial Notice[1] in

10 Support of Defendants' Motion to Dismiss ("RJN"), ECF 18.

11        Breede was a managing member of Integrated Surgical.  Breede Decl. ¶ 2, Ex. A to RJN,

12 ECF 18.  Moss was a member of Integrated Surgical.  Moss Decl. ¶ 2, Ex. C to RJN, ECF 18.

13 Plaintiff was a member of a separate company, No Plume and Gloom, LLC ("NPG").  Compl.

14 ¶ 12.  In his capacity as a member of NPG, Plaintiff invested "a significant amount of cash in

15 Integrated Surgical."  *Id.*  Plaintiff was therefore an investor in Integrated Surgical and alleges that

16 he was entitled to receive information about Integrated Surgical's business.  *See id.*

17        From 2015 to 2017, Defendants indicated that Integrated Surgical's intellectual property

18 ("IP") assets had significant value.  Compl. ¶ 13.  In April 2015, NPG purchased an 8%

19 membership interest in Integrated Surgical for $500,000.  *Id.*  Plaintiff extrapolates that Integrated

20 Surgical was therefore valued at approximately $6,250,000 at that time.  *Id.*  According to the

21 Complaint, Integrated Surgical was represented by counsel in California from Wilson Sonsini

22 Goodrich & Rosati ("WSGR").  *Id.* ¶ 55.  Plaintiff alleges that at least one member of WSGR,

23 Mr. Daniel Koeppen, was a member of WS Investment Company, LLC, which invested in

24 Integrated Surgical.  *See id.* ¶ 9.  Mr. Koeppen is an attorney residing within and licensed to

25 practice law in California.  *Id.*

26        Throughout 2016, members of Integrated Surgical made various efforts to sell Integrated

27

28

---

[1] As set forth in Section III *infra*, the Court grants Defendants' requests for judicial notice.

Surgical's IP assets. Compl. ¶ 14. In December 2016, Breede indicated that Integrated Surgical would engage a broker to sell its IP assets. *Id.* ¶ 15. On February 7, 2017, Breede informed investors that Integrated Surgical had entered an agreement with Gerbsman Partners ("Gerbsman") to act as a broker for the IP sale. *Id.* ¶ 16. Plaintiff alleges that Gerbsman is based in California and that Breede, "in cooperation with his California attorneys," contacted Gerbsman to sell Integrated Surgical's assets. *Id.* Plaintiff further alleges that "because Integrated Surgical had limited capital, Breede personally advanced the money to pay Gerbsman for their services and was responsible for providing Gerbsman with the information necessary to perform its function." *Id.*

On or about February 17, 2017, Gerbsman posted a public article online stating that it had been retained to sell the assets of Integrated Surgical, "which was headquartered in Palo Alto;" that the founding partners had invested $1.5 million in Integrated Surgical; and that Integrated Surgical held 5 issued U.S. patents and 14 U.S. non-provisional patent applications. Compl. ¶ 17. The article further stated that two of Integrated Surgical's products were evolutionary and revolutionary. *Id.* By June of 2017, two companies were potential bidders for Integrated Surgical's assets. *Id.* ¶ 19. However, on or about July 6, 2017, one of the two companies indicated that it would not be making an offer. *Id.* The remaining company was named "Conmed." *Id.* ¶ 20.

On or about July 14, 2017, Conmed expressed interest in purchasing the IP assets, but had not proposed a price or terms and conditions. Compl. ¶ 20. On July 17, 2017, Conmed indicated that it would offer only $300,000 to purchase Integrated Surgical's IP assets. *Id.* ¶ 22. Several members of Integrated Surgical then expressed their concern that Conmed's offer was but a fraction of the valuation previously referenced by Breede and Moss in their limited disclosures to the members of Integrated Surgical. *Id.* On July 18, 2017, Breede indicated that Conmed had increased its offer to $350,000 and needed an answer by the next morning. *Id.* ¶ 23.

On July 19, 2017, at approximately 9:15 a.m., Plaintiff, Breede, and others held a teleconference wherein Plaintiff informed Breede that NPG had voted to reject the Conmed deal and that he (Plaintiff) would personally be making an offer to purchase Integrated Surgical's IP assets. Compl. ¶ 24. Plaintiff advised Defendants that he would pay $360,000 for the assets,

which was $10,000 greater than the amount offered by Conmed, and that he would agree to the form of Asset Purchase Agreement proposed by Integrated Surgical as an additional inducement. *Id.* Plaintiff alleges that Breede, Moss, and Koeppen then orally accepted Plaintiff's offer and stated they would "call again later to finalize the terms." *Id.*

Plaintiff further alleges that on July 19, 2017, at approximately 1:15 p.m., Breede, Moss, Koeppen, and two others participated in an additional teleconference to finalize the agreement with Plaintiff. Compl. ¶ 25. Later that day, at 5:21 p.m., Breede sent Plaintiff an email stating, "can you give me an update?" *Id.* ¶ 26. At 5:57 p.m., Plaintiff responded, stating, "Ok all set. I will wire 250k into acct tomorrow. I will be away till Sunday with little access to mail or phone all other paperwork can be handled by Dan and John and Mike." *Id.* ¶ 27. At 6:01 p.m., Breede responded to Plaintiff, "Thanks for the update and I look forward to the executed document. I will turn it around first thing tomorrow." *Id.* ¶ 28.

On July 20, 2017, at 11:05 a.m., Breede emailed Plaintiff requesting that Plaintiff send him a copy of the contract so that he had the correct version, and further indicated that he would sign. Compl. ¶ 29. At 11:32 a.m., Breede sent an email to Plaintiff's attorney, John Cansdale ("Cansdale"), and requested the exact name of the purchasing entity so that the sale documents could be executed. *Id.* ¶ 30. At 1:20 p.m., Breede emailed Cansdale stating, "I expect to finalize within the hour." *Id.* ¶ 31. At 3:57 p.m., Breede followed up with an additional email stating, "Dan [Koeppen] sending now. Please wire." *Id.* ¶ 32. At 4:01 p.m., Koeppen sent an email to Cansdale stating, "Please see the asset purchase agreement. The signature pages are to be held in escrow, pending authorization from [] Breede []. Before the signature pages are released, [Breede] needs to see the purchase price of $350,000 wired into WSGR escrow and the signature pages executed by the buyer [Plaintiff]." *Id.* ¶ 33.

The purported sale to Plaintiff did not come to pass. On July 20, 2017, at 5:42 p.m., Breede emailed Plaintiff, stating, "**I don't have confirmation of the wire**, but I think the deal is done." Compl. ¶ 38 (emphasis added and removed). July 20, 2017 was a Thursday. At 6:38 p.m. on July 20, Cansdale informed Breede that Plaintiff could not make the wire transfer until Monday, July 23, 2017, and that Plaintiff would send the signature page when Plaintiff "gets to an

4

area w computer / service." *Id.* ¶ 40. At 6:43 p.m. on July 20, Koeppen emailed Cansdale, stating, "We need to speak as soon as possible. At this point Integrated [Surgical] has to take its signature pages out of escrow with you **since we didn't get the wire or signature pages today**. There is a material development in the deal that [Plaintiff] should be aware of before we decide how to proceed. **To be clear – there is no agreement to sell the assets to [Plaintiff] at this point**." *Id.* ¶ 41 (emphasis added).

On July 21, 2017, at 9:57 a.m., Plaintiff faxed Koeppen a copy of the Aquino Asset Purchase Agreement ("Aquino APA") executed by Plaintiff. Compl. ¶ 43. On July 21, 2017, at approximately 12:45 p.m., Plaintiff, Cansdale, Breede, Moss, and Koeppen participated in a teleconference in which Breede described a "heated conference call" with representatives from Conmed. *Id.* ¶ 44. Plaintiff alleges that Breede indicated he had been "threated verbally with profanities" by Conmed's representatives and that Conmed had threatened to "sue [Breede] personally and Integrated Surgical if they did not go forward with the deal offered by Conmed." *See id.* At approximately 3:00 p.m. on July 21, Plaintiff, Cansdale, Breede, Moss, and Koeppen participated in another teleconference, in which "Breede and Koeppen expressed their growing concerns regarding the threats they had personally received from Conmed." *Id.* ¶ 45.

Plaintiff alleges that around July 27, 2017, Conmed and Integrated Surgical entered into a separate Asset Purchase Agreement ("Conmed APA") and that several days thereafter Integrated Surgical "transferred the same IP assets to Conmed which Integrated Surgical had already contracted to sell to [Plaintiff.]" Compl. ¶¶ 48–49. Plaintiff further alleges that the Conmed APA called for closing at the offices of WSGR in San Diego, California, and contained a California forum selection clause naming the Northern District of California. *See id.* ¶¶ 58, 59. Similarly, according to the Complaint, the Aquino APA would have closed at the offices of WSGR in San Diego, California, and likewise contained a California forum selection clause naming the Northern District of California. *See id.* ¶¶ 55, 56; *see also* Aquino APA (Draft) §§ 5, 13(i), Ex. B of Ex. A to RJN, ECF 18.

According to the Complaint, on or about July 27, 2017, Breede and Moss informed Plaintiff that they intended to enter into the Conmed APA, even though Conmed's offer was for a

lower price and even though Conmed had attempted to require terms that "were significantly more onerous than those in the Aquino APA." Compl. ¶ 60. Plaintiff now alleges tortious interference with contractual relations against Breede and Moss, on the basis that Breede and Moss did not accept Plaintiff's higher offer price "because of their concerns about their personal financial standing [due to Conmed's threat to sue them personally], instead of their concern about the best interests of Integrated Surgical." *Id.* ¶ 66. Plaintiff further alleges that "Breede and Moss decided to conspire with Conmed to interfere with the contract between Integrated Surgical and [Plaintiff]" and that "Breede and Moss and Conmed conspired to create a fiction that they were legally entitled to have Integrated Surgical enter into a contract with Conmed to sell the assets to Conmed." *Id.* ¶¶ 66, 67.

### B. Prior State Court Action

Plaintiff previously sued Defendants in California state court on substantially similar facts and allegations as those now before this Court. *See, e.g.*, Breede Decl., Ex. A to RJN, ECF 18. On August 27, 2018, the Superior Court of California, County of Santa Clara granted Defendant Breede's Motion to Quash for lack of personal jurisdiction, stating that "Plaintiff has not established by a preponderance of the evidence that this court has personal jurisdiction over Mr. Breede as an individual." Breede Order at 1, Ex. B to RJN, ECF 18. The Superior Court found that "[a]ll of [Breede's] alleged activities and executed contractual agreements as relied upon in [P]laintiff's argument are within Mr. Breede's capacity as Managing Member of Integrated Surgical. Those contacts with Integrated Surgical do not create minimum contacts for the Managing Member personally. On the other hand, there is substantial evidence making a finding necessary that Mr. Breede is a resident of Connecticut with no personal contacts with Santa Clara County." Breede Order at 1–2, Ex. B to RJN, ECF 18.

Similarly, on October 16, 2018, the Superior Court granted Defendant Moss's Motion to Quash for lack of personal jurisdiction pursuant to California Code of Civil Procedure § 418.10(a)(1). *See* Moss Order at 1–2, Ex. D to RJN, ECF 18. Plaintiff subsequently filed the instant action on November 15, 2018. *See generally* Compl.

## II. LEGAL STANDARD

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where "the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted). However, uncontroverted allegations in the complaint must be taken as true, and factual disputes contained within declarations or affidavits are resolved in the plaintiff's favor. *Schwarzenneger*, 374 F.3d at 800.

Where no applicable federal statute governs personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* The Ninth Circuit has established a three-prong test for whether a court can exercise specific personal jurisdiction: (1) the defendant must have "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California," thereby "invoking the benefits and protections of its laws"; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable, i.e. it must comport with fair play and substantial justice. *Schwarzenegger*, 374 F.3d at 802.

The plaintiff bears the burden of showing that defendants have purposefully availed themselves of the privileges and burdens of a forum state's laws and showing that the claim arises out of forum-related activities. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff's evidence is

insufficient to satisfy either prong, personal jurisdiction is improper. *Id.* However, if the plaintiff presents sufficient evidence to satisfy the first two prongs, the burden shifts to the defendant to "present a compelling case" that jurisdiction in the forum would be unreasonable (i.e. fail to comport with fair play and substantial justice). *Id.*

A showing of purposeful availment typically consists of "evidence of the defendant's actions in the forum, such as executing or performing a contract there. By taking such actions, a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As a "quid-pro-quo" for such benefits, defendants must "submit to the burdens of litigation in that forum." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)); *see also Cote v. Wadel*, 796 F.2d 981, 984 (7th Cir. 1986) ("Personal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident.").

A federal district court may exercise either general or specific personal jurisdiction over a nonresident defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 127–28 (2014). General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 139 (internal quotation marks and citation omitted). In contrast, specific jurisdiction exists when the defendant's contacts with the forum state are more limited, but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 128. To satisfy due process, "the defendant's suit-related conduct must create a substantial connection *with the forum State.*" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).

### B. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars a federal district court from reviewing the final determinations of a state court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923). "*Rooker-Feldman* may also apply where the parties do not directly contest the merits of a state court decision, as the doctrine prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855,

859 (9th Cir. 2008) (internal quotation marks and citation omitted). In other words, any final judgment issued by a state court is barred from *de facto* appeal in federal district court. *See id.* However, the Supreme Court has held that application of the *Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court *judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added).

## C.    Rule 11

Rule 11 of the Federal Rules of Civil Procedure imposes upon attorneys a duty to certify that they have read any pleadings or motions they file with the court and that such pleadings/motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose. Fed. R. Civ. P. 11(b); *Business Guides, Inc. v. Chromatic Comm. Enters., Inc.*, 498 U.S. 533, 542 (1991). If a court finds that Rule 11(b) has been violated, the court may impose appropriate sanctions to deter similar conduct. Fed. R. Civ. P. 11(c)(1); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("[T]he central purpose of Rule 11 is to deter baseless filings in district court."). However, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). Rule 11 sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 1344. "Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously." *Id.*

In determining whether Rule 11 has been violated, a "court must consider factual questions regarding the nature of the attorney's pre-filing inquiry and the factual basis of the pleading." *Cooter*, 496 U.S. at 399. However, courts should "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 Advisory Comm. Notes (1983 Amendment). "[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused

the judicial process, and, if so, what sanction would be appropriate." *Cooter*, 496 U.S. at 396.

## III.  REQUESTS FOR JUDICIAL NOTICE

The Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of LA.*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Defendants request judicial notice of two filings and two orders in state court proceedings involving the parties. *See* ECF 18; ECF 20. Because these are court documents properly subject to judicial notice, the Court hereby GRANTS Defendants' Requests for Judicial Notice.

## IV.  DISCUSSION

Defendants bring the following two motions: (1) Motion to Dismiss for Lack of Personal Jurisdiction ("MTD"); and (2) Motion for Rule 11 Sanctions ("MFS"). *See generally* MTD, ECF 17; MSF, ECF 19. The Court addresses each motion in turn. For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss and DENIES Defendants' motion for sanctions.

### A.  Motion to Dismiss (ECF 17)

Defendants assert that there is no jurisdiction over Defendants in California and seek an order dismissing this action with prejudice "because the jurisdictional defects cannot be cured." *See* MTD at 2. Defendants argue that "[t]he Complaint neither asserts that California has personal jurisdiction over Defendants nor alleges sufficient facts to show that exercise of jurisdiction over

Defendants in California is proper," *id.* at 6, pointing out that "a California State Court already determined that Defendants are not subject to personal jurisdiction in this state," *id.* at 7. Defendants' personal jurisdiction argument consists of three prongs: (1) that Defendants are not subject to general personal jurisdiction in California; (2) that Defendants are not subject to specific personal jurisdiction in California; and (3) that the *Rooker-Feldman* doctrine bars the instant action from proceeding. *See id.* at 7, 9, 12.

Plaintiff counters[2] that "[s]pecific personal jurisdiction exists over Defendants because they interfered with [Plaintiff's] attempt to contract with [Integrated Surgical] based on marketing invoking Palo Alto, California as [Integrated Surgical's] place of business" and that the *Rooker-Feldman* doctrine does not apply because the state court's rulings were without prejudice. *See* Opp'n at 2, ECF 21. The Court briefly addresses general personal jurisdiction, followed by the *Rooker-Feldman* doctrine and specific personal jurisdiction, respectively.

### 1. General Personal Jurisdiction

Defendants argue that general personal jurisdiction over them does not exist in California because they do not reside in California, they were not personally parties to either the Aquino APA or the Conmed APA, and no other "traditional bas[is] for general personal jurisdiction" applies. *See* MTD at 7–9. In his opposition brief, Plaintiff does not dispute Defendants' assertion that general personal jurisdiction is inapplicable. *See generally* Opp'n. The Court agrees with Defendants' unopposed argument that Plaintiff has not demonstrated that Breede or Moss is subject to general jurisdiction in California, and that amendment on this issue would be futile.

### 2. *Rooker-Feldman* Doctrine

The Superior Court of California, County of Santa Clara previously found that neither Breede nor Moss was subject to personal jurisdiction in the County of Santa Clara under essentially the same facts and allegations at issue here. *See* Breede Order, Ex. B to RJN, ECF 18; Moss Order, Ex. D to RJN, ECF 18. Defendants point out that "the same jurisdictional issues are

---

[2] The parties additionally dispute whether venue is proper in the Northern District of California under Defendants' alternative request to dismiss this action for improper venue. *See* MTD at 13; Opp'n at 2. However, because the Court grants Defendants' motion to dismiss, the Court need not and does not reach the parties' venue arguments.

11

present" here as were at issue in the state action. *See* MTD at 13. Therefore, Defendants assert that "[t]he issue of whether Breede or Moss are subject to jurisdiction in Santa Clara County has already been adjudicated" and that Plaintiff's decision to pursue this action in federal court runs afoul of the *Rooker-Feldman* doctrine because "[it] is akin to seeking review of the State Action." *Id.* at 12–13. Plaintiff counters that "the *Rooker-Feldman* doctrine only applies if the federal court is asked to act as an appellate court over a state court judgment or order" and that here "this Court is not being asked to review the state court's decision." *See* Opp'n at 17. Plaintiff further contends that the state court's orders dismissing Breede and Moss were "without prejudice" and therefore "the *Rooker-Feldman* doctrine does not apply because there is no judgment or order that is on appeal." *See id.* at 17–18.

The Court agrees with Plaintiff that the *Rooker-Feldman* doctrine is inapplicable to the instant dispute. The *Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court *judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added). Meanwhile, California Code of Civil Procedure § 581(h) provides that "[t]he court may **dismiss without prejudice** . . . when dismissal is made **pursuant to Section 418.10**." Cal. Civ. Proc. Code § 581(h) (emphasis added). Here, the Superior Court granted Breede and Moss's respective motions to quash for lack of personal jurisdiction pursuant to California Code of Civil Procedure § 418.10(a)(1). *See* Breede Order, Ex. B to RJN, ECF 18; Moss Order, Ex. D to RJN, ECF 18. Both dismissal orders were without prejudice—neither order states that it is with prejudice, and neither order sets any limitations or parameters on Plaintiff's ability to refile the action. *See generally id.* Indeed, Defendants could not credibly argue and do not argue that the Superior Court's orders were made with prejudice.

In other words, the Superior Court's dismissal orders were without prejudice and therefore do not constitute "judgments." Accordingly, the *Rooker-Feldman* doctrine does not bar the instant action. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

### 3. Specific Personal Jurisdiction

The Court considers Defendants' argument that Defendants are not subject to specific personal jurisdiction in California under the Ninth Circuit's three-prong test: (1) purposeful availment or purposeful direction; (2) arising out of forum-related activities; and (3) reasonableness. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Regarding prong one, the Ninth Circuit "often use[s] the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction." *See id.* However, "availment and direction are, in fact, two distinct concepts." *Id.* Which concept to apply depends on the nature of the suit. "A purposeful availment analysis is most often used in suits sounding in contract." *Id.* On the other hand, "[a] purposeful direction analysis [] is most often used in suits sounding in tort." *Id.* Put differently, the Ninth Circuit "appl[ies] different purposeful availment tests to contract and tort cases." *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).

The instant action sounds in tort, not contract. Plaintiff brings a single tort claim, tortious interference with contractual relations against Defendants. *See generally* Compl. No contract claims or other claims are asserted. Moreover, Plaintiff does not allege that Defendants contracted with or attempted to contract with Plaintiff. Rather, the only parties to the Conmed APA are Conmed and Integrated Surgical, and the only parties to the proposed Aquino APA are Plaintiff and Integrated Surgical. *See id.* ¶¶ 60–63; *see also* Aquino APA (Draft), Ex. B of Ex. A to RJN, ECF 18. In other words, under either of the APA's, there would not have been a contractual relationship between Plaintiff and Defendants. Accordingly, although the parties' briefing generally follows the "purposeful availment" analysis and not the "purposeful direction" analysis, the Court is obligated under Ninth Circuit law to apply the "purposeful direction" analysis to this tort action. *See Picot v. Weston*, 780 F.3d 1206, 1213–14 (9th Cir. 2015) (applying "purposeful direction" analysis and three-part "effects" test to a claim of tortious interference with contract); *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (explaining that because the plaintiff alleged a tort-like cause of action, purposeful direction "is the proper analytical framework").

As discussed below, the Court finds that Plaintiff has failed to satisfy the purposeful direction test and therefore fails to meet the burden of demonstrating that jurisdiction is appropriate, *see Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

In determining whether a defendant purposefully directs his activities at the forum state, the Ninth Circuit applies an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. *Mavrix*, 647 F.3d at 1228 (internal quotations and citations omitted). The "effects" test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotations and citations omitted). The Court discusses each element of the "effects" test in turn, followed by a short conclusion. Although the Court finds that Plaintiff has carried his burden as to the first two elements, Plaintiff has failed to show the third element—that Defendants' alleged acts caused harm that Defendants know is likely to be suffered in California.

### a. Intentional Act

As to the first prong of purposeful direction, Plaintiff has alleged facts sufficient to support a finding that Defendants "committed an intentional act." According to the Complaint, Defendants entered into the Conmed APA with full knowledge that Conmed's offer was for a lower price than Plaintiff's offer and that Conmed had attempted to require terms that "were significantly more onerous than those in the Aquino APA." Compl. ¶ 60. In addition, Plaintiff alleges that Defendants did not accept Plaintiff's higher offer price "because of their concerns about their personal financial standing [due to Conmed's threat to sue them personally], instead of their concern about the best interests of Integrated Surgical." *Id.* ¶ 66. Plaintiff further alleges that "Breede and Moss decided to conspire with Conmed to interfere with the contract between Integrated Surgical and [Plaintiff]" and that "Breed and Moss and Conmed conspired to create a fiction that they were legally entitled to have Integrated Surgical enter into a contract with Conmed to sell the assets to Conmed." *Id.* ¶¶ 66, 67. These alleged facts support the Court's finding the Defendants committed an intentional act.

**b. Expressly Aimed at the Forum State**

Next, by a slim margin and drawing all permissible inferences for Plaintiff, the Court finds that Defendants' acts described above were "expressly aimed" at California, the forum state. Defendants argue that "there is no relationship whatsoever between Defendants and California related to the claims asserted by [Plaintiff]." MTD at 10. Defendants point out that "[t]he 'contract' that [Plaintiff] alleges exists is between [Plaintiff] and Integrated Surgical, *not Breede or Moss*." *Id.* (emphasis in original). Defendants further argue that "none of the alleged tortious contract interference by Breede and Moss is alleged to have occurred in California." *Id.* Plaintiff counters that "Defendants clearly marketed [Integrated Surgical] as a Palo Alto based company through Gerbsman." Opp'n at 13. Plaintiff further argues that "the [Aquino APA] in favor of [P]laintiff was to be performed [in California], [] the offending contract with Conmed was actually performed [in California] . . . and [] all of the agreements required venue to be predicated [in California]." *See* Opp'n to MFS at 5 (emphasis removed), ECF 22.

As an initial matter, the Court agrees with Defendants that actions taken by Defendants in California in only their capacity as members of Integrated Surgical would not subject Defendants to personal jurisdiction in California in their individual capacity. Here, neither Breede nor Moss is a party to the Conmed APA or the proposed Aquino APA. *See generally* Aquino APA (Draft); *see also* Compl. ¶¶ 58–59. Thus, the mere existence of the Conmed APA set to close in California with a California forum selection clause to which Integrated Surgical was a party does not on its own show that Defendants *personally* aimed their acts at California.

However, Defendants do not fully address the thrust of Plaintiff's allegations. Plaintiff specifically alleges that Defendants acted *outside* of their capacity as members of Integrated Surgical—i.e., that Defendants reneged on the Aquino APA, which was more favorable to Integrated Surgical, to make a deal to sell Integrated Surgical's assets to Conmed at a lower price precisely "because of [Defendants'] **concerns about their personal financial standing**." *See* Compl. ¶ 66 (emphasis added). Plaintiff alleges that these concerns were based on "threats [] personally received from Conmed." *See id.* ¶ 45. Plaintiff does not allege that the threats themselves were delivered in California by Conmed or received in California by Breede or Moss.

However, Plaintiff alleges that the conversations between Conmed, Breed, and Moss led "Breede and Moss and Conmed [to] conspire[] to create a fiction that they were legally entitled to have Integrated Surgical enter into a contract with Conmed to sell [Integrated Surgical's] assets to Conmed." *See id.* ¶ 67. Plaintiff further alleges that Conmed, Breede, and Moss consummated the conspiracy in California—by arranging for closing and actually closing the Conmed APA in California. *See id.* ¶¶ 58–61.

The Court is skeptical that the alleged "conspiracy" between Conmed, Breede, and Moss is plausible as pled. Plaintiff essentially alleges that Defendants capitulated to Conmed's demands under threat of personal suit. *See* Compl. ¶¶ 65–67. That said, whether Plaintiff has plausibly alleged a conspiracy is tangential to the instant personal jurisdiction analysis, and the Court must take all uncontroverted allegations in the complaint as true and resolve factual disputes at this stage in the plaintiff's favor, *Schwarzenneger*, 374 F.3d at 800. Thus, here, although Plaintiff's allegations of a conspiracy are weak, the Court will credit Plaintiff's pleading that a conspiracy existed for purposes of the instant analysis. In addition, it is uncontroverted that both the Conmed APA and the proposed Aquino APA called for closing in California. *See, e.g.*, Aquino APA (Draft) § 5, Ex. B of Ex. A to RJN, ECF 18. Indeed, Plaintiff submits testimony from Breede in which Breede admitted that the Conmed APA called for "closing [to] occur at the Wilson Sonsini office in San Diego, California." *See* Breede Depo. at 117:19–23, Ex. A to Brower Decl., ECF 21-1.

Plaintiff further alleges that several days after Conmed and Integrated Surgical entered into the Conmed APA, Integrated Surgical "transferred the same IP assets to Conmed which Integrated Surgical had already contracted to sell to [Plaintiff.]" Compl. ¶¶ 48–49. Accordingly, the alleged conspiracy to sell Integrated Surgical's assets to Conmed and not Plaintiff touched on California by virtue of the Conmed APA, which called for closing in California. And according to the Complaint, Defendants proceeded with the Conmed deal for Defendants' personal gain. *See, e.g.*, Compl. ¶ 66.

Thus, resolving factual disputes in Plaintiff's favor, the Court finds that Defendants as individuals "expressly aimed" their actions at California, at least on the basis of setting the

16

Conmed APA for closing in California. *Mavrix*, 647 F.3d at 1229. This activity did not simply "engag[e] an attorney or a broker who resides in California" as Defendants argue, *see* Reply at 4–5, ECF 23, but rather focused on accomplishing the transaction—closing the Conmed APA—within the forum state. Although a close call, resolving factual disputes in Plaintiff's favor, Defendants took "express aim" at the forum state in their personal capacities in setting the Conmed APA for closing in California.

### c. Harm Defendants Know is Likely to be Suffered in the Forum State

The Court now turns to the question of harm, the third element of the "effects" test. To satisfy this element, Defendants must have allegedly caused harm that Defendants know is likely to be suffered in the forum state. *Mavrix*, 647 F.3d at 1228. The Ninth Circuit has explained that "the effects test requires that the brunt of the harm have occurred within the forum state, or [at least] that some significant amount of harm have occurred there." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002). Defendants argue that they did not commit acts "that they knew would likely cause harm in the forum state." Reply at 3. In addition, Defendants point out that Plaintiff admitted that "'Defendants' actions were directed to and caused harm to [Plaintiff] in New Jersey.'" Reply at 9 (citing and quoting Opp'n at 21). Meanwhile, Plaintiff appears to make a single argument in support of harm—"that Defendants advertised [Integrated Surgical] as having a Palo Alto address and committed an intentional tort related to a California company [that] harms California residents." *See* Opp'n at 14; *see also* Compl. ¶ 6 (alleging that Integrated Surgical was headquartered in Palo Alto).

Plaintiff's argument in support of harm is unavailing. First of all, none of the parties to this action is a citizen of California. Plaintiff is a citizen of New Jersey. Compl. ¶ 3. Breede is a citizen of Connecticut. *Id.* ¶ 4. Moss is a citizen of Utah. *Id.* ¶ 5. Plaintiff does not allege that any of the parties to this action suffered harm in California—to the contrary, Plaintiff affirmatively states that "[Plaintiff] is a resident of New Jersey and Defendants' actions were directed to and caused harm to [Plaintiff] in New Jersey." Opp'n at 21. Thus, Plaintiff is not a "California resident" who allegedly suffered harm due to Defendants' alleged tort.

Second, Plaintiff's theory that non-party Integrated Surgical suffered harm in California

17

because it is a "California company" fails because the record shows that Integrated Surgical never was a California company. The parties took jurisdictional discovery in the prior state action. Kazi Decl. ¶ 3, ECF 17-1. In the state action, Breede submitted testimony that "Integrated Surgical is and always has been a limited liability company formed and existing under the laws of the State of Connecticut, with its principal place of business in Ridgefield, Connecticut." Breede Decl. ¶ 2, Ex. A to RJN, ECF 18. Indeed, on August 21, 2017, Integrated Surgical filed a Certificate of Dissolution with the Secretary of the State of Connecticut. *See* Certificate of Dissolution, Ex. A to Breede Decl. Breede further submitted that "Integrated Surgical never had any offices in California. To the extent Integrated Surgical had a main office, which also could be referred to as its 'headquarters,' its headquarters were always maintained and located in Connecticut." Breede Decl. ¶ 4. Similarly, Moss submitted testimony in the state action that Integrated Surgical is "a Connecticut limited liability company that has its principal place of business in Ridgefield, Connecticut." Moss Decl. ¶ 2, Ex. C to RJN, ECF 18. Moss further submitted that "Integrated Surgical's headquarters were always located in Connecticut." *Id.* ¶ 4. In addition, Breede and Moss submitted testimony that nearly all of Integrated Surgical's assets and operations were located in Canada, that most of its prototype testing occurred in Canada, and that some testing occurred in New York and Colorado. *See id.* ¶ 4; Breede Decl. ¶ 4.

This direct evidence contradicts Plaintiff's allegation in the Complaint that Integrated Surgical was headquartered in Palo Alto, California. In demonstrating that jurisdiction is appropriate, "the plaintiff cannot simply rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800. Here, Plaintiff offers nothing more than such bare allegations. Although it is undisputed that Gerbsman (who was engaged by Integrated Surgical to sell its IP assets) *marketed* Integrated Surgical as headquartered in Palo Alto, there is no factual dispute as to whether Integrated Surgical actually was headquartered in Palo Alto—it was not. Mere sophistry by an outside salesman is not sufficient to invoke personal jurisdiction. Similarly, Plaintiff's allegation that Noah Minskoff was "the primary contributor of the IP assets" and "primarily operated from an office in Palo Alto, California which was leased by another company in which Breede was a member," *see* Compl. ¶ 11, does not support Plaintiff's theory that Integrated

18

1    Surgical was headquartered in California.

2          Accordingly, economic harm suffered by non-party Integrated Surgical due to Defendants

3    alleged "bad acts" would have been felt in Connecticut, where Integrated Surgical was organized

4    and maintained its principal place of business. *See Mavrix*, 647 F.3d at 1231–32. While a

5    company can suffer jurisdictionally sufficient economic harm in multiple fora, including where the

6    bad act occurred, *see id.* at 1231, Plaintiff fails to allege any theory of harm other than Plaintiff's

7    "California company" assertion. Moreover, no facts in the record support a finding that Integrated

8    Surgical suffered jurisdictionally sufficient economic harm in California under a separate theory.

9    *Cf. Mavrix*, 647 at 1231–32 (finding that the plaintiff, a Florida corporation, suffered

10   jurisdictionally sufficient harm in California due to copyright infringement in California that

11   "destroyed" plaintiff's California-specific market share). Here, unlike the plaintiff corporation in

12   *Mavrix*, Defendants' alleged bad acts did not subject Integrated Surgical to California-specific

13   harm. In sum, the Court finds that Plaintiff has failed to show that non-party Integrated Surgical

14   suffered jurisdictionally sufficient economic harm in California.

15         Third, even if Integrated Surgical were subject to a measure of harm in California, any

16   such limited harm to this non-party would not plausibly constitute the "brunt of the harm" or even

17   "some significant amount of harm," *see Dole Food*, 303 F.3d at 1113, relative to the harm Plaintiff

18   claims to have suffered "in excess of $5 million," *see* Compl. at Prayer for Relief. In other words,

19   the additional $10,000 that Plaintiff alleges he would have paid Integrated Surgical for its IP

20   (compared to what Integrated Surgical received from Conmed) is but a tiny fraction of the harm

21   Plaintiff alleges to have suffered in New Jersey, *see* Opp'n at 21. Thus, Plaintiff has come

22   nowhere close to showing that a sufficient "proportion of the overall harm[] [was] suffered in

23   California." *See Dole Food*, 303 F.3d at 1112.

24         Accordingly, for multiple independent reasons, the Court finds that Plaintiff has failed to

25   meet his burden of showing that Defendants meet the third element of the "effects" test.

26                    **d.  Conclusion re Specific Personal Jurisdiction**

27         The Court finds that the "purposeful direction" inquiry applies to this tort action and

28   therefore applies the "purposeful direction" inquiry in analyzing prong one of specific personal

                                                   19

jurisdiction. The Court finds that Plaintiff has not carried his burden of showing that the third element of the "purposeful direction" inquiry is met. Thus, Plaintiff has failed to show that Defendants "purposefully directed" their activities at the forum state.

Accordingly, the Court need not and does not address the final two prongs of the specific jurisdiction analysis.

### 4. Conclusion re Motion to Dismiss

In conclusion, the Court finds that although the *Rooker-Feldman* doctrine does not apply to the instant action, Plaintiff has nonetheless failed to show that Defendants are subject to either general or specific personal jurisdiction in California. Thus, the Court hereby GRANTS Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. Accordingly, the Court need not and does not reach Defendants' alternative request for dismissal based on improper venue.

In addition, the Court finds that amendment to allege facts to establish personal jurisdiction over Defendants in California would be futile, as Plaintiff has already obtained jurisdictional discovery in the prior state action and did not seek additional jurisdictional discovery in the instant action. Moreover, Plaintiff was already afforded an opportunity to allege new facts in support of personal jurisdiction in California by virtue of the instant action, which Plaintiff filed after Breede and Moss were dismissed from the prior state court action for lack of personal jurisdiction. Accordingly, Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE to refiling in any court with lawful jurisdiction over these matters. The Court's instant ruling is not meant to have any bearing on the state court's prior rulings of dismissal without prejudice.

### B. Motion for Sanctions (ECF 19)

In the Ninth Circuit, Rule 11 sanctions are appropriately imposed where: (1) a paper is filed with the court for an improper purpose; or (2) the paper is "frivolous." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). A "frivolous" argument or claim is one that is "*both* baseless *and* made without a reasonable and competent inquiry." *Id.* (emphasis added). Accordingly, when sanctions are sought on the basis of a complaint, the Court must determine: "(1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before

signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

Defendants move for Rule 11 sanctions on the basis that Plaintiff brings the instant action "despite the fact that a California state court already determined that there in no jurisdiction over non-residents Breede and Moss in [California] in connection with Aquino's claims." *See* MFS at 1, ECF 19. Plaintiff counters that the prior state court action was dismissed "without prejudice" and that "an objective attorney could find the Complaint before this Court to be well-founded." *See* Opp'n to MFS at 3, 4, ECF 22.

The Court finds that Defendants' motion for sanctions is unwarranted. Defendants rely primarily on the orders in the prior state court action to support their argument in favor of sanctions, alleging that Plaintiff displayed "blatant disregard for this judicial determination." *See* MFS at 1. However, as discussed in Section IV.A.2 *supra*, Breede and Moss were dismissed from the state court action without prejudice. Accordingly, the Court found in Section IV.A.2 *supra* that the instant action is not barred by the *Rooker-Feldman* doctrine. Although the Court ultimately disagrees with Plaintiff that Defendants are subject to personal jurisdiction in California, the Court does not find that Plaintiff filed the instant action for a frivolous or improper purpose. Thus, Defendant's motion for sanctions is hereby DENIED.

## V. ORDER

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED. Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE to refiling in any court with lawful jurisdiction over these matters. In addition, Defendants' Motion for Rule 11 Sanctions is DENIED.

The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: August 29, 2019

BETH LABSON FREEMAN
United States District Judge